IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION


QUINTILLA MARIA VANTREASE    )
    )
v.    )    No. 3:14-1321
    )
CAROLYN W. COLVIN,    )
Acting Commissioner of Social Security    )


To: The Honorable Todd J. Campbell, District Judge


## REPORT AND RECOMMENDATION

The plaintiff filed this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying the plaintiff's claim for Disability Insurance Benefits ("DIB"), as provided by the Social Security Act.

Upon review of the Administrative Record as a whole, the Court finds that the Commissioner's determination that the plaintiff is not disabled under the Act is supported by substantial evidence in the record as required by 42 U.S.C. § 405(g) and that the plaintiff's motion for judgment on the administrative record (Docket Entry No. 14) should be DENIED.


## I. INTRODUCTION

In October 2010, the plaintiff protectively filed an application for DIB, alleging a disability onset date of February 25, 2010, due to, *inter alia*, fibromyalgia, asthma, sleep apnea, anxiety, high blood pressure, and stomach problems. (Tr. 11, 112-18, 131, 139.) Her application was denied initially and upon reconsideration. (Tr. 56-57, 62-64, 68-69.) The plaintiff appeared and testified

at a hearing before Administrative Law Judge Renee Andrews-Turner ("ALJ") on January 2, 2013. (Tr. 29-55.) On February 7, 2013, the ALJ entered an unfavorable decision. (Tr. 11-23.) On April 23, 2014, the Appeals Council denied the plaintiff's request for review of the ALJ's decision, thereby making the ALJ's decision the final decision of the Commissioner. (Tr. 1-3.)

## II. BACKGROUND

The plaintiff was born on May 24, 1962 (tr. 139), and she was 47 years old as of her alleged disability onset date. She graduated high school and has worked as a phlebotomist. (Tr. 32, 50, 143-48.)

### A. Chronological Background: Procedural Developments and Medical Records

#### 1. Medical Evidence

On October 23, 2008, the plaintiff was examined by Dr. M. Porter Meadors, III, a rheumatologist, and diagnosed with fibromyalgia, osteoarthritis, hypertension, dyspepsia/reflux disease, and chronic seasonal allergies/asthma. (Tr. 196-98.) During the examination, the plaintiff had some tenderness in her trapezius muscles and bilateral epicondyles, good range of motion in her hips, good grip strength, and normal tendon reflexes with no evidence of synovitis. (Tr. 197.) Dr. Meadors recommended physical therapy and prescribed Etodolac for the plaintiff's arthritic pain. (Tr. 198.) On March 4, 2009, the plaintiff presented to Dr. Maurice Barnes, a gastroenterologist, and was diagnosed with chronic gastroesophageal reflux disease ("GERD"), probable sleep apnea, exogenous obesity, and asthma. (Tr. 200.) Dr. Barnes suggested a sleep apnea evaluation and video esophogram. *Id.* The plaintiff returned to Dr. Meadors on April 9, 2009, reporting "some

improvement in regard to persistent soft tissue pain." (Tr. 320, 323.) Dr. Meadors did not change the plaintiff's medical regimen and recommended that she undergo additional studies. (Tr. 320.)

From approximately April 2009 until October 2009, the plaintiff presented to Dr. Patricia Arns for primary care. (Tr. 242-65, 326.) During this time, Dr. Arns treated the plaintiff for a variety of ailments including, *inter alia*, asthma, sinusitis, hypertension, hyperglycemia, chest pain, stomach pain, weight gain, vitamin D deficiency, myalgia, probable osteoarthritis, and syncope after the plaintiff "passed out in church" one day. *Id.* Physical examinations during this time were generally unremarkable, finding the plaintiff to be alert, oriented, and in no acute distress with normal balance, gait, coordination, and deep tendon reflexes but with some edema in her lower legs and crepitus in her knees. (Tr. 252, 257, 259, 263-64.) In April and May 2009, Dr. Arns observed that the plaintiff demonstrated "[n]o unusual anxiety or evidence of depression." (Tr. 259, 264.) Dr. Arns prescribed a number of medications, including Advair and Singulair for asthma, Lunesta for sleep, Nexium for GERD, Cymbalta and Lyrica for fibromyalgia, and Benicar for hypertension. (Tr. 243, 246, 251, 257-58, 261, 264-65.) At various times, she observed that the plaintiff's asthma and hypertension were controlled on medication. (Tr. 251, 257, 264.) After October 2009, the plaintiff continued to call Dr. Arns' office with medical complaints, and she received prescription refills and medication samples from Dr. Arns until at least February 2011. (Tr. 243-48, 326.)

From approximately October 2010 until October 2011, the plaintiff presented for primary care to Matthew Walker Comprehensive Health Center where she was seen primarily by Dr. Joyce Semenya. (Tr. 327-72.) During this time, Dr. Semenya treated the plaintiff for fibromyalgia, chest pain, eczema, hypertension, asthma, depression, anxiety, anemia, dyspepsia, and abnormal glucose. *Id.* Dr. Semenya prescribed, *inter alia*, Flexeril and Etodolac for musculoskeletal pain; Advair and

Singulair for asthma; and Lisinopril for hypertension.  *Id.*  After the plaintiff complained of depression and anxiety, Dr. Semenya variously prescribed Cymbalta, Gabapentin, and Celexa. (Tr. 327-31, 336, 346-48, 354-59.)  In March 2011, the plaintiff was assigned a Global Assessment of Functioning ("GAF") score of 56, indicating moderate symptoms.[1]  (Tr. 355.)  In June 2011, she reported that she was "doing well on medication," experiencing "[symptom] improvement," and "manag[ing] stressors better."  (Tr. 335-36, 340.)

On January 17, 2011, Dr. Brannon Mangus, a Tennessee Disability Determination Services ("DDS") consultative physician, performed an all-systems examination of the plaintiff, who reported having problems with asthma, fibromyalgia, hypertension, stomach problems such as constipation and GERD, untreated sleep apnea, and anxiety.  (Tr. 266-72.)  Upon examination, she had normal gait, station, and mobility, and she had no difficulty getting out of a chair or onto and off of the examining table.  (Tr. 269.)  She was alert and oriented and in no apparent distress with normal speech and normal intellectual functioning.  *Id.*  Her grip strength was forty pounds in her right hand and thirty pounds in her left hand, and she was able to grasp and manipulate objects without difficulty.  *Id.*  She demonstrated 5/5 strength in all major muscle groups, no tenderness of any joint, 2+ deep tendon reflexes, and full range of motion throughout.  (Tr. 271.)  Dr. Mangus observed that the plaintiff's ability to "walk, twist, turn, bend, and lift was not adversely affected" by obesity, and he did not identify any diagnosable abnormalities during the examination.  *Id.*  Dr. Mangus noted the plaintiff's history of fibromyalgia, probable sleep apnea, stomach problems, asthma,

---

[1] The GAF scale is used to assess the social, occupational, and psychological functioning of adults.  Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000) ("DSM–IV–TR").  A GAF score between 51-60 falls within the range of "[m]oderate symptoms [or] moderate difficulty in social, occupational, or school functioning."  *Id.*

hypertension, and anxiety but opined that she had "no impairment-related physical limitations, by examination, today." (Tr. 271-72.)

On February 9, 2011, the plaintiff was psychologically examined by DDS psychological examiners Bobbie Hand, M.S., and Kathryn Sherrod, Ph.D. (Tr. 279-84.) The examiners observed that the plaintiff did not exhibit "any symptoms of anxiety" and was "polite, friendly, and talkative" throughout her evaluation. (Tr. 282.) The examiners noted that the plaintiff's concentration and memory appeared adequate, that she functioned in the "low average range of intelligence," and that her adaptive functioning was normal. (Tr. 282-83.) Due to the plaintiff's complaints of "a relatively high number of unreasonable symptoms," the examiners opined that "she was exaggerating the severity of her psychological symptoms." (Tr. 282.) The plaintiff reported that she was able to "attend to her self-care needs" and perform "several household chores unassisted" and that she was able to go grocery shopping. (Tr. 283.) Ms. Hand and Dr. Sherrod found no evidence upon which to base a psychological diagnosis, assigned the plaintiff a GAF score of 65,[2] and opined that she had no limitations with her ability to understand, remember, or concentrate; with her social skills; or with her adaptive functioning. (Tr. 283-84.)

On March 7, 2011, Dr. Larry Welch, Ed.D, a nonexamining DDS psychological consultant, completed a Psychiatric Review Technique ("PRT"). (Tr. 286-99.) Dr. Welch found no medically determinable mental impairment and no functional limitations. *Id.* On July 11, 2011, Dr. Jenaan

_____

[2] A GAF score within the range of 61-70 means that the plaintiff has "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) [or] some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." *Id.*

5

Khaleeli, Psy.D., a nonexamining DDS psychological consultant, reached the same conclusion. (Tr. 306-19.)

The plaintiff presented to the emergency room on several occasions from April 2011 to August 2012 with symptoms related to asthma, including wheezing, dyspnea, chest pain, and sinusitis. (Tr. 373-405.) Chest x-rays were normal. (Tr. 375, 381, 387.) An EKG in August 2012 showed "a normal sinus rhythm, a normal axis, and no evidence of ischemia." (Tr. 387.) An x-ray in August 2012 showed an "obese thorax with bibasilar atelectatic changes" and "osteopenia and osteoarthritic changes of the bony thorax." (Tr. 387, 398.)

On October 15, 2012, Dr. Arns wrote a letter indicating that she had known the plaintiff since 1993, and treated her "for many of those years." (Tr. 406.) Dr. Arns indicated that the plaintiff had "severe asthma, requiring hospitalizations and multiple ER visits;" depression; and fibromyalgia, "complicated by degenerative disc problems and osteoarthritis." *Id.*

Dr. Arns completed a medical opinion assessing the plaintiff's ability to perform work-related physical activities and opined that she could lift and carry less than ten pounds occasionally and frequently; stand and walk less than two hours in an eight-hour workday; and sit less than two hours in an eight-hour workday. (Tr. 407-08.) She opined that the plaintiff could sit thirty minutes and stand ten minutes before needing to change positions and that she needed to be able to shift positions at will and walk around every thirty minutes for five minutes at a time. (Tr. 407.) Dr. Arns based these limitations on the plaintiff's low back pain, fibromyalgia, degenerative disc disease, osteoarthritis, and depression. *Id.* Dr. Arns also opined that, due to osteoarthritis in the plaintiff's knee, she could occasionally twist but could never stoop, crouch, or climb stairs and ladders. (Tr. 408.) Additionally, Dr. Arns opined that the plaintiff's upper extremity weakness caused

impairments with her ability to reach, push, and pull. *Id.* She also opined that the plaintiff should avoid all exposure to extreme cold and heat, high humidity, fumes, odors, dusts, gases, perfumes, soldering fluxes, solvents, cleaners, and chemicals due to her severe asthma and that the plaintiff would be absent from work more than four days per month. *Id.*

Dr. Arns also completed a medical opinion assessing the plaintiff's ability to perform work-related mental activities and opined that, due to depression, the plaintiff had moderate difficulty responding appropriately to usual work situations and to changes in a routine work environment. (Tr. 409-11.)

**B. Hearing Testimony**

At the hearing held on January 2, 2013, the plaintiff was represented by counsel, and the plaintiff and the vocational expert ("VE"), Pedro Roman, testified. (Tr. 29-55.) The plaintiff testified that she is 5'1" tall and weighs 190 pounds. (Tr. 32.) She testified that she graduated high school and lives by herself. (Tr. 32, 38.) She said that she last worked in February 2010 for a physician but that the job ended "[d]ue to some disagreements and health issues." (Tr. 33.) She explained that, when she stopped working, her pain had gotten worse and she was under stress. (Tr. 41.)

The plaintiff testified that her health problems include fibromyalgia, sleep apnea, arthritis, depression, and asthma. She said that fibromyalgia "affects [her] whole body" but particularly her right leg and hip. (Tr. 33.) She described the pain as "excruciating" and said that it sometimes "keeps [her] from sleeping." (Tr. 33-34.) She related that she averages four hours of sleep on a "good night," "stay[s] pretty fatigued and tired," and does not eat very much. (Tr. 34.) She said that

she used to fall asleep at work two or three times a day but that she has not had a sleep study performed because she does not have insurance. (Tr. 34, 45.) She testified that she also has arthritis in her right knee and began having problems with her right hand grip about a month before the hearing. (Tr. 44-45.)

The plaintiff testified that her depression "onset from a variety of things," including getting a divorce, buying a house, losing her job, and remaining unemployed for three years. (Tr. 37.) She testified that her asthma attacks can be caused by laughter, changes in the weather, and fragrances. (Tr. 35.) She said that she has breathing problems "several times a week" and sometimes goes to the emergency room for breathing treatments. *Id.* She said that she takes Advair, Singulair, and uses inhalers for her breathing problems and that she used to receive breathing treatments from her physician-employer. (Tr. 35-36.)

The plaintiff testified that due to back and leg pain, she can sit, stand, or walk for no more than thirty minutes. (Tr. 36-37, 47.) She estimated that she can lift approximately ten to fifteen pounds. (Tr. 47.) She explained that she "can do most" chores around her house, including sweeping, mopping, and washing dishes, but that she does not have much to do because she lives alone. (Tr. 48.) She said that she drives approximately three times a week, usually to church where she sings in the choir. (Tr. 46.) She explained that the church service lasts approximately an hour to an hour-and-a-half and that she "sit[s] quite a bit during that time" but also stands while singing in the choir. *Id.* The plaintiff testified that her fellow church members "check on" her and that her mother goes grocery shopping for her and checks to see if she has eaten or taken her medicine. (Tr. 38-39.)

The plaintiff described Dr. Arns as her primary care provider "who knows all of [her] health issues." (Tr. 39.) She explained that she has seen Dr. Arns since "probably the early '90s" but has not been able to pay for visits because she does not have insurance so Dr. Arns gives her medication samples. (Tr. 37-39.) The plaintiff testified that she saw Dr. Arns "a couple of months" before the hearing. (Tr. 38.) When asked by the ALJ whether Dr. Arns performed "a thorough physical at that time," the plaintiff replied that "[s]he checked me out a little bit then and filled out my paperwork and stuff for me and she gave me more samples for my asthma and my blood pressure and some more Cymbalta." (Tr. 48.) The plaintiff testified that it had "been a long time" since she had seen Dr. Arns prior to that visit but said that it had not been more than a year. (Tr. 49.)

The VE testified that his testimony was consistent with the Dictionary of Occupational Titles ("DOT") and classified the plaintiff's past work as a phlebotomist as light with a Specific Vocational Preparation ("SVP) level of three.[3] (Tr. 50, 54.) The ALJ asked whether a hypothetical person with the plaintiff's age, education, and work history would be able to obtain work if she had no exertional limitations; could frequently balance, stoop, kneel, crouch, crawl, and climb; and could have only frequent exposure to dust, fumes, odors, gases, and pulmonary irritants. (Tr. 50-51.) The VE replied that such a person could perform the plaintiff's past relevant work and could also work as a general clerk, cashier II, and finisher. (Tr. 51.)

---

[3] The SVP "is defined as the amount of elapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." U.S. Dep't of Labor, Dictionary of Occupational Titles 1009 (4th ed. 1991). It is measured on a scale from 1-9 on which the higher number assigned to a job, the greater the length of time that is required to be able to perform the job. *Id.* An SVP level of three requires "[o]ver 1 month up to and including 3 months" of training to perform that specific work.

## III. THE ALJ'S FINDINGS

The ALJ issued an unfavorable ruling on February 7, 2013. (Tr. 11-23.) Based upon the

record, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2015 (Exhibit 2D).

2. The claimant has not engaged in substantial gainful activity since February 25, 2010, the alleged onset date (20 CFR 404.1571 *et seq.*).

\*\*\*

3. The claimant has the following severe impairments: asthma; obesity; and hypertension (20 CFR 404.1520(c)).

\*\*\*

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

\*\*\*

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: frequently balance, stoop, kneel, crouch, crawl, and climb and frequent exposure to dust, fumes, odors, gases, and pulmonary irritants.

\*\*\*

6. The claimant is capable of performing past relevant work as a phlebotomist. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

\*\*\*

7. The claimant has not been under a disability, as defined in the Social Security Act, from February 25, 2010, through the date of this decision (20 CFR 404.1520(f)).

(Tr. 13-23.)

## IV. DISCUSSION

### A. Standard of Review

The determination of disability under the Act is an administrative decision, and the only questions before this Court are whether the decision of the Commissioner is supported by substantial evidence and whether the Commissioner employed the proper legal standards in reaching her conclusion. 42 U.S.C. § 405(g). *See Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971) (adopting and defining substantial evidence standard in context of Social Security cases); *Kyle v. Comm'r Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010). The Commissioner's decision must be affirmed if it is supported by substantial evidence, "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakely v. Comm'r of Soc. Sec.,* 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 477 (6th Cir. 2003); *Her v. Comm'r of Soc. Sec.,* 203 F.3d 388, 389-90 (6th Cir. 1999). Substantial evidence is defined as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)); *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007); *Le Master v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976) (quoting Sixth Circuit opinions adopting language substantially similar to that in *Richardson*).

A reviewing court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *See, e.g., Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citing *Myers v. Richardson*, 471 F.2d 1265, 1268 (6th Cir. 1972)). The Court must accept the ALJ's explicit findings and determination unless the record as a whole is without substantial evidence to

support the ALJ's determination. 42 U.S.C. § 405(g). *See, e.g., Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 366 (6th Cir. 1984).

The Commissioner must employ a five-step evaluation process in determining the issue of disability. *See, e.g., Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001) (citing *Abbot v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990)). The original burden of establishing disability is on the plaintiff, and impairments must be demonstrated by medically acceptable clinical and laboratory diagnostic techniques. *See* 42 U.S.C. § 1382c(a)(3)(D); 20 C.F.R. §§ 404.1512(a), (c), 404.1513(d). First, the plaintiff must show that she is not engaged in "substantial gainful activity" at the time she seeks disability benefits. *Id.* (citing 20 C.F.R. §§ 404.1520(b), 416.920(b)); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007). A plaintiff who is performing substantial gainful activity is not disabled no matter how severe the plaintiff's medical condition may be. *See, e.g., Dinkel v. Sec'y of Health & Human Servs.*, 910 F.2d 315, 318 (6th Cir. 1990).

Second, the plaintiff must show that she suffers from a severe impairment that meets the twelve month durational requirement. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). *See also Edwards v. Comm'r of Soc. Sec.*, 113 Fed. Appx. 83, 85 (6th Cir. 2004). A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." *Barnhart v. Thomas*, 540 U.S. 20, 24, 124 S. Ct. 376, 157 L. Ed.2d 333 (2003) (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)). Basic work activities are "the abilities and aptitudes necessary to do most jobs," such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; [c]apacities for seeing, hearing, and speaking; [u]nderstanding, carrying out, and remembering simple instructions; [u]se of judgment; [r]esponding appropriately to supervision, co-workers and usual work situations; and [d]ealing with changes in a routine work setting." 20 C.F.R.

§ 404.1521(b).  The Commissioner is required to consider the combined effects of impairments that individually are not severe but cumulatively may constitute a severe impairment.  42 U.S.C. § 423(d)(2)(B); *Foster v. Bowen*, 853 F.2d 483, 490 (6th Cir. 1988).

Third, if the plaintiff is not engaging in substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, the plaintiff is presumed disabled without further inquiry, regardless of age, education or work experience.  20 C.F.R. §§ 404.1520(d), 416.920(d)).  The plaintiff may establish that she meets or equals a listed impairment and that the impairment has lasted or is expected to last for at least twelve months or result in death. *See Listenbee v. Sec'y of Health & Human Servs.*, 846 F.2d 345, 350 (6th Cir. 1988).  The plaintiff is not required to show the existence of a listed impairment in order to be found disabled, but such a showing results in an automatic finding of disability.  *See Blankenship v. Bowen*, 874 F.2d 1116, 1122 (6th Cir. 1989).

Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, she is not disabled.  *Id.*  The plaintiff has the burden of proving inability to perform past relevant work or proving that a particular past job should not be considered relevant.  *Cruse*, 502 F.3d at 539; *Jones*, 336 F.3d at 474 ("Through step four, the [plaintiff] bears the burden of proving the existence and severity of limitations caused by [her] impairments and the fact that [she] is precluded from performing [her] past relevant work"); *Smith v. Sec'y of Health & Human Servs.*, 893 F.2d 106, 109 (6th Cir. 1989).  If the plaintiff fails to carry this burden, she must be denied disability benefits.

Once the plaintiff establishes a *prima facie* case that she is unable to perform her prior relevant employment, the burden of production shifts in step five to the Commissioner to show that

the plaintiff can perform other substantial gainful employment and that such employment exists in significant numbers in the national economy. *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (quoting *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997)). *See also Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). To rebut a *prima facie* case, the Commissioner must come forward with proof of the existence of other jobs a plaintiff can perform. *Longworth*, 402 F.3d at 595. *See also Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 528 (6th Cir. 1981), *cert. denied*, 461 U.S. 957, 103 S. Ct. 2428, 77 L. Ed. 2d 1315 (1983) (upholding the validity of the medical-vocational guidelines grid as a means for the Commissioner of carrying his burden under appropriate circumstances). It remains the plaintiff's burden to prove the extent of her functional limitations. *Her*, 203 F.3d at 391. Even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in significant numbers in the national economy that the plaintiff can perform, she is not disabled. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009). *See also Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028-29 (6th Cir. 1990); *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 88-89 (6th Cir. 1985); *Mowery v. Heckler*, 771 F.2d 966, 969-70 (6th Cir. 1985).

If the question of disability can be resolved at any point in the sequential evaluation process, the claim is not reviewed further. 20 C.F.R. § 404.1520(a)(4). *See also Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (holding that resolution of a plaintiff's claim at step two of the evaluative process is appropriate in some circumstances).

**B. The Five-Step Inquiry**

In this case, the ALJ resolved the plaintiff's claim at step four of the five-step process. At step one, the ALJ found that the plaintiff had not engaged in substantial gainful activity since her alleged onset date. (Tr. 13.) At step two, the ALJ determined that the plaintiff had the following severe impairments: asthma, obesity, and hypertension. *Id.* At step three, the ALJ found that the plaintiff's impairments, either singly or in combination, did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 15-16.) At step four, the ALJ determined that the plaintiff was capable of performing her past relevant work as a phlebotomist. (Tr. 22.)

**C. The Plaintiff's Assertions of Error**

The plaintiff argues that the ALJ erred by: (1) failing to give the proper weight to Dr. Arns' medical opinion and giving more weight to the opinions of the examining and non-examining DDS consultants;[4] (2) failing to properly consider all of the plaintiff's impairments and failing to provide sufficient reasons for finding that some impairments were not severe; (3) failing to include a function-by-function assessment; and (4) failing to properly consider the plaintiff's obesity. Docket Entry No. 14-1; at 5-13.

---

[4] The plaintiff raises these as separate issues (Docket Entry No. 14-1, at 5-10), but the Court will discuss them together.

**1. The ALJ properly evaluated the medical opinion evidence.**

The plaintiff argues that the ALJ erred by not giving controlling weight to the opinion of Dr. Arns and by "inappropriately deferring" to the opinions of the examining and non-examining state agency consultants. Docket Entry No. 14-1, at 5-10.

The Regulations provide that the SSA "will evaluate every medical opinion" that it receives. 20 C.F.R. § 404.1527(c). However, every medical opinion is not treated equally, and the Regulations describe three classifications for acceptable medical opinions: (1) nonexamining sources; (2) nontreating sources; and (3) treating sources. A nonexamining source is "a physician, psychologist, or other acceptable medical source[5] who has not examined [the claimant] but provides a medical or other opinion in [the claimant's] case." 20 C.F.R. § 404.1502. A nontreating source is described as "a physician, psychologist, or other acceptable medical source who has examined [the claimant] but does not have, or did not have, an ongoing treatment relationship with [the claimant]." *Id.* Finally, the Regulations define a treating source as "[the claimant's] own physician, psychologist, or other acceptable medical source who provides [the claimant], or has provided [the claimant], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]." *Id.* An "ongoing treatment relationship" is a relationship with an "acceptable medical source when the medical evidence establishes that [the claimant] see[s], or [has] seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the claimant's] medical condition(s)." *Id.*

---

[5] The Regulations define acceptable medical sources as licensed physicians, both medical and osteopathic doctors, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists. 20 C.F.R. § 404.1513(a).

Generally, an ALJ is required to give "controlling weight" to the medical opinion of a treating source, as compared to the medical opinion of a non-treating source, if the opinion of the treating source is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2).[6] *See also Tilley v. Comm'r of Soc. Sec.*, 394 Fed. Appx. 216, 222 (6th Cir. 2010); *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009). This is commonly known as the treating physician rule. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); Soc. Sec. Rul. 96-2p, 1996 WL 374188 (July 2, 1996).

Even if a treating source's medical opinion is not given controlling weight, it is "'still entitled to deference and *must be weighed using all of the factors provided in [20 C.F.R. 416.927]* . . . .'" *Fisk v. Astrue*, 253 Fed. Appx. 580, 585 (6th Cir. 2007) (quoting Soc. Sec Rul. 96-2p, 1996 WL 374188, at *4) (emphasis in original). The ALJ must consider:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion with respect to relevant evidence such as medical signs and laboratory findings; (4) the consistency of the opinion with the record as a whole; (5) the specialization of the physician rendering the opinion; and (6) any other factor raised by the applicant.

*Meece v. Barnhart*, 192 Fed. Appx. 456, 461 (6th Cir. 2006) (quoting current 20 C.F.R. § 404.1527(c)(2)-(6)). The ALJ must also provide "good reasons" for the resulting weight given to the treating source. Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (citing current 20 C.F.R.

---

[6] Effective March 26, 2012, the numbering for the treating physician rules changed. Section 416.927(d)(2) became section 416.927(c)(2), and the identically worded and interpreted section 404.1527(d)(2) became section 404.1527(c)(2). See Johnson-Hunt v. Comm'r of Soc. Sec., 2012 WL 4039752, at *6 n.6 (6th Cir. Sept. 14, 2012).

§ 404.1527(c)(2)). The "good reasons" must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* If an ALJ fails to adhere to this procedural requirement, the case should be remanded for further clarification.[7] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544-45 (6th Cir. 2004).

Regarding Dr. Arns' assessment of the plaintiff's mental limitations, the ALJ found as follows:

> The undersigned accords some weight to Dr. Arns in that the claimant has no limitation in her ability to understand, remember, and carry out simple or complex instructions; however, moderate limitations in adaptation are not warranted by the evidence. Mental status exams are relatively unremarkable, and the claimant has not sought further mental health treatment after October 2011. Based upon the objective evidence, it is reasonable to conclude that Dr. Arns' moderate finding is based on the claimant's subjective complaints.

(Tr. 14-15.)

The ALJ also reviewed Dr. Arns' assessment of the plaintiff's physical limitations finding that:

> The undersigned accords no weight to Dr. Arns's opinion for multiple reasons. The record establishes that the physician last physically evaluated the claimant in October 2009, three years prior to giving these overly restrictive limitations . . . .
>
> In addition, no physical examinations or diagnostic report documents any abnormalities upon which to base such limitations. As outlined above, the claimant is consistently noted to have a normal gait, normal fine motor skills, non-tender extremities, full motion, 5/5 strength, no motor or sensory deficits [and] strong and symmetric handgrips . . . . All cardiac testing and chest imaging have been unremarkable. . . .

---

[7] The rationale for the "good reasons" requirement is to provide the plaintiff with a better understanding of the reasoning behind the decision in her case and to ensure that the ALJ properly applied the treating physician rule. *Wilson*, 378 F.3d at 544 (quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)).

> Lastly, the reported activities of daily living fail to provide any support for Dr. Arns's opinion.

(Tr. 21; Internal citations omitted.)

After reviewing the record, the Court concludes that the ALJ properly assessed Dr. Arns' medical opinion. The ALJ considered Dr. Arns to be a treating source but determined that her opinion was not well-supported and was inconsistent with the other evidence of record and, therefore, not entitled to controlling weight. As the ALJ noted, Dr. Arns' physical and mental status examinations are relatively unremarkable and do not support the level of limitations that she placed on the plaintiff. The ALJ reasonably concluded that Dr. Arns' opinion was not well-supported because it lacked the support of her own treating record.

Additionally, the ALJ determined that Dr. Arns' opinion was not consistent with other evidence in the record. In particular, the ALJ noted that the plaintiff reported a "wide range of daily activities," including, *inter alia*, caring for a pet, tending to personal needs, preparing meals, driving, shopping, attending church multiple times a week, and performing household chores such as washing laundry and dishes, vacuuming, and sweeping. (Tr. 21.)

The ALJ also observed that Dr. Arns last physically evaluated the plaintiff in October 2009, nearly three years before she completed her October 2012 medical opinion. *Id.* The plaintiff contends that the ALJ's finding is in error (Docket Entry No. 14-1, at 7), pointing to her testimony at the hearing that, when Dr. Arns completed her medical opinion, Dr. Arns "checked [her] out a little bit," "filled out [her] paperwork," and gave her medication samples. (Tr. 48.) The plaintiff also points out that, although she testified that it had "been a long time" since she had seen Dr. Arns prior to that visit, the plaintiff later clarified that it had been less than a year. (Tr. 49.)

Other than the plaintiff's testimony, which the ALJ generally found to be "not entirely credible" (tr. 17), there is no record that Dr. Arns examined the plaintiff between October 2009 and October 2012 when she rendered her opinion. Dr. Arns' treatment notes show that she last examined the plaintiff in October 2009. (Tr. 251-52.) Although the plaintiff continued to call Dr. Arns' office with complaints, and Dr. Arns continued to call in prescription refills and provide samples (tr. 243-48, 326), there is simply no indication in the treatment record that she examined the plaintiff between October 2009 and October 2012. Although the plaintiff testified that Dr. Arns "checked [her] out a little bit" when she completed her medical opinion in October 2012, it was within the ALJ's purview to give the plaintiff's testimony little weight. The ALJ's conclusion that the plaintiff's testimony was not entirely credible is supported by the fact that Dr. Arns did not indicate in her assessment or accompanying letter that she had recently examined the plaintiff. (Tr. 406-11.)

The ALJ gave great weight to the opinion of the DDS consultants, including Dr. Brannon Mangus who physically examined the plaintiff in January 2011 and found no diagnosable abnormalities or physical impairments. (Tr. 20; 266-72.) The plaintiff argues that the ALJ should not have given more weight to the opinion of a consultative examiner than the opinion of a treating source. Docket Entry No. 14-1, at 9-10. However, as set out above, the ALJ chose not to give Dr. Arns' opinion controlling weight and provided good reasons for the weight that she gave it. The ALJ's decision regarding the weight to give Dr. Arns' opinion was independent of her decision regarding Dr. Mangus' opinion. Having decided that the treating physician's opinion was not entitled to controlling weight, the ALJ was entitled to rely on the consultative examiner's opinion.

In sum, the ALJ did not err when assessing the medical opinion evidence. The ALJ chose not to give controlling weight to Dr. Arns' opinion because it was not supported by her own

treatment notes and was inconsistent with other evidence in the record. These are "good reasons" for discounting Dr. Arns' opinion. The ALJ chose to give great weight to Dr. Mangus' opinion, and her decision to do so is supported by substantial evidence in the record. The Court concludes that the ALJ complied with the treating physician rule and properly evaluated the medical opinion evidence.

### 2. The ALJ properly evaluated all of the plaintiff's impairments and provided sufficient reasons for finding that some of her impairments were not severe.

The plaintiff argues that the ALJ erred at step two by "failing to properly consider" all of her impairments and by "failing to provide sufficient reasons" for not finding that some of her impairments were severe. Docket Entry No. 14-1, at 11-12. Specifically, the plaintiff argues that she was diagnosed with fibromyalgia, osteoarthritis, sleep apnea, depression, anxiety, and GERD and that the ALJ erred by failing to find that these were severe impairments and by failing to provide sufficient explanation for her decision.

The plaintiff bears the burden at step two of proving that she suffers from a severe impairment. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). The Regulations provide that an impairment is considered severe if that impairment "significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). *See also* 20 C.F.R. § 404.1521(a) ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."). The Regulations define basic work activities as the "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b). The Sixth Circuit has construed the step two severity determination as a *de minimis*

hurdle in the five-step sequential process, but it still effectively screens out "claims that are 'totally groundless' solely from a medical standpoint." *Higgs v. Bowen*, 880 F.2d 860, 862-63 (6th Cir. 1988) (quoting *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 89-90 (6th Cir. 1985) and citing *Murphy v. Sec'y of Health & Human Servs.*, 801 F.2d 182, 185 (6th Cir. 1986)). An ALJ's failure to find an impairment severe at step two is not reversible error if the ALJ "considers all of a claimant's impairments in the remaining steps of the disability determination." *Fisk v. Astrue*, 253 Fed. Appx. 580, 583 (6th Cir. Nov. 9, 2007) (citing *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)). *See also Simpson v. Comm'r of Soc. Sec.*, 344 Fed. Appx. 181, 190-91 (6th Cir. Aug. 27, 2009).

Contrary to the plaintiff's claims, the ALJ evaluated each of her alleged impairments. Specifically, in addition to the plaintiff's asthma, obesity, and hypertension, conditions which the ALJ determined were severe impairments, the ALJ also considered the plaintiff's alleged impairments of "diabetes, back pain, fibromyalgia, stomach problems, sleep apnea, and arthritis in her knees and right hand." (Tr. 13.) However, the ALJ found that these impairments were not severe because there was no evidence that they caused functional limitations beyond those caused by the impairments that the ALJ found to be severe. *Id.* The ALJ also evaluated the plaintiff's alleged impairments of depression and anxiety but found that, due to the plaintiff's "lack of significant mental health treatment," "wide range of daily activities," "mild mental allegations at the hearing," and "absence of any significant mental status exam abnormalities," she did not have a medically determinable mental impairment. (Tr. 15.)

Having found at least one severe impairment, the ALJ continued her analysis and evaluated all of the plaintiff's impairments when determining her RFC. Specifically, the ALJ reviewed the

medical history associated with each of the plaintiff's severe impairments as well as the non-severe impairments of diabetes, sleep apnea, stomach problems, fibromyalgia and musculoskeletal pain. (Tr. 18-20.)  The ALJ in fact provided a detailed analysis of each of the plaintiff's alleged impairments and the medical evidence showing that each impairment did not cause additional functional limitations.  The ALJ properly evaluated all of the plaintiff's impairments throughout the five-step process.

### 3.  The ALJ properly performed a function-by-function assessment of the plaintiff's limitations and did not err in formulating her RFC.

The plaintiff argues that the ALJ failed to perform a function-by-function assessment of her limitations when determining her RFC as required by Social Security Ruling ("SSR") 96-8p. Docket Entry No. 14-1, at 12.

SSR 96-8p provides that an "RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities," and that "[e]ach function must be considered separately."  Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *3, 5. The Sixth Circuit has held that "[a]lthough SSR 96-8p requires a function-by-function evaluation to determine a claimant's RFC, case law does not require the ALJ to discuss those capacities for which no limitation is alleged." *Delgado v. Comm'r of Soc. Sec.*, 30 Fed. Appx. 542, 547 (6th Cir. Mar. 4, 2002) (internal citations and quotation marks omitted).  Additionally, "[a]lthough a function-by-function analysis is desirable, SSR 96-8p does not require ALJs to produce such a detailed statement in writing" because there is a difference "between what an ALJ must consider and what an ALJ must discuss in a written opinion." *Id.* (internal citations and quotation marks omitted).

Consequently, "the ALJ need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record." *Id.* (internal citations and quotation marks omitted).

The plaintiff does not identify the specific limitations that she contends the ALJ failed to include. The Court's review shows that the ALJ appropriately considered all of the relevant evidence and appropriately explained her decision. The ALJ discussed in great detail the plaintiff's alleged limitations as well as her treatment history and each of the medical opinions in the record. (Tr. 13-22.) To the extent that the ALJ did not make a specific finding regarding every possible limitation to be gleaned from the record, the Court concludes that the ALJ comprehensively assessed the plaintiff's limitations and included only the limitations that she found supported by the record. Indeed, the ALJ's written decision shows that she appropriately considered all of the plaintiff's impairments, including those that she did not include in the plaintiff's RFC. The ALJ fully considered all of the relevant evidence in accordance with SSR 96-8p and appropriately explained her decision to include or not include certain limitations in the plaintiff's RFC.

### 4. The ALJ properly evaluated the plaintiff's obesity.

The plaintiff argues that the ALJ did not properly consider her obesity when determining her RFC. Docket Entry No. 14-1, at 13.

SSR 02-01p, which details the SSA's policy on obesity, provides that, even though the SSA no longer classifies obesity as a listed impairment, adjudicators must still consider its effects when

evaluating an individual's RFC.  Soc. Sec. Rul. 02-01p, 2002 WL 34686281, at *1.  Accordingly, SSR 02-01p provides that:

> An assessment should also be made of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment.  Individuals with obesity may have problems with the ability to sustain a function over time . . . [O]ur RFC assessments must consider an individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis.  A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule.

*Id.* at *6.

The Sixth Circuit has found that SSR 02-01p does not offer "any particular procedural mode of analysis for obese disability claimants."  *Coldiron v. Comm'r of Soc. Sec.*, 391 Fed. Appx. 435, 443 (6th Cir. Aug. 12, 2010) (quoting *Bledsoe v. Barnhart*, 165 Fed. Appx. 408, 412 (6th Cir. Jan. 31, 2006)).  Rather, it provides that "obesity, in combination with other impairments, 'may' increase the severity of the other limitations."  *Id.*  (quoting *Bledsoe*, 165 Fed. Appx. at 412).  However, obesity should be evaluated on a case-by-case basis because it "*may or may not* increase the severity or functional limitations of the other impairment."  Soc. Sec. Rul. 02-01p, 2002 WL 34686281, at *6 (emphasis added).  An ALJ's explicit discussion of the plaintiff's obesity indicates sufficient consideration of her obesity.  *See Coldiron*, 391 Fed. Appx. at 443.  The Sixth Circuit has also held that an "ALJ does not need to make specific mention of obesity if [s]he credits an expert's report that considers obesity."  *Bledsoe*, 165 Fed. Appx. at 412 (citing *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004)).

The plaintiff testified that she is 5'1" tall and weighs 190 pounds.  (Tr. 32.)  The ALJ included obesity as a severe impairment and noted that the plaintiff's weight "ranged from 195 to 214 pounds . . . during the period in question."  (Tr. 13, 18.)  The ALJ evaluated whether the

plaintiff's obesity, in combination with her other impairments, met or equaled a listed impairment and determined that it did not. (Tr. 15-16.) The ALJ also considered the plaintiff's obesity, including its combined effect on other impairments, in the context of her RFC assessment, observing, for example, that "someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from the arthritis alone." (Tr. 18-19.) However, the ALJ found that obesity "does not cause any significant limitations on [the plaintiff's] mobility and thus, she has the capacity to perform work at any exertional level." (Tr. 19.) Nevertheless, the ALJ included postural limitations in the plaintiff's RFC due in part to her obesity. (Tr. 20.) The ALJ's decision demonstrates that she appropriately considered the plaintiff's obesity and the extent to which her obesity, in combination with other impairments, limits her overall functional ability.

## V. RECOMMENDATION

For the above stated reasons it is recommended that the plaintiff's motion for judgment on the administrative record (Docket Entry No. 14) be DENIED and the Commissioner's decision be AFFIRMED.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which the objection is made. Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully Submitted,

JULIET GRIFFIN
United States Magistrate Judge